Edward L. MURRAY, Plaintiff–
Appellant,

v.

James L. RAY, Colleen C. Ray, Connie
J. Easley and John T. Easley,
Defendants–Appellants.

Nos. 18373, 18331.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 4, 1993.

---

Robert W. Evenson, Evenson, Carlin & LePage, Pineville, for plaintiff-appellant.

Walter E. Williams, Joplin, for defendants-appellants.

MONTGOMERY, Judge.

Plaintiff, Edward L. Murray, brought this action against Defendants, James L. Ray and Colleen C. Ray, Connie J. Easley and John T. Easley, alleging in Count II that Defendants intentionally caused Greater Joplin Associates, Ltd., to terminate its business relationship with Plaintiff without justification.[1] Count II was submitted to the jury by an instruction patterned after MAI 23.11 (tortious interference with contract), and the jury awarded Plaintiff $3,500 in damages against each Defendant for a total judgment of $14,000. Both sides filed appropriate after-trial motions, and all motions were overruled. Both Plaintiff and Defendants appeal.

In 1988, Plaintiff, along with Don Lawellin and Defendants James Ray and Connie Easley, purchased a Re/Max real estate franchise. All four were licensed Missouri real estate sales persons. That same year, with an initial investment of $6,000 each, they formed a Missouri corporation known as Greater Joplin Associates, Ltd., (GJAL), and began listing and selling property. Using the Re/Max name, GJAL operated in the Joplin, Missouri, area.

After incorporation, Don Lawellin became the sole director and was elected president and secretary of the corporation, since he was the only one of the investors who held a broker's license. In May of 1989, Lawellin resigned as broker, officer and director and relinquished his ownership in both the corporation and the Re/Max franchise. After this reshuffling, Defendants James Ray and his wife Colleen Ray became joint owners of one-

---

1. Greater Joplin Associates, Ltd., was named as a Defendant in Plaintiff's petition, was served with process, and filed an answer. However, the record fails to reveal that any particular disposition has been made regarding this Defendant. Clearly, Plaintiff submitted his case only as to the individual Defendants, and the forms of verdict pertained only to them. The trial court entered a judgment in accordance with those verdicts. Under such circumstances, Plaintiff abandoned his claim against the corporation, and we conclude the judgment is final and appealable. *Young By and Through Young v. Davis*, 726 S.W.2d 836, 838 (Mo.App.1987).

third of the corporate stock, as did Defendant Connie Easley and her husband John Easley. Plaintiff owned the remaining one third. Defendant James Ray, who had by that time acquired a broker's license, replaced Lawellin as broker, officer and director of GJAL.

In the fall of 1989, Sally Woodman of the Harrison (Arkansas) Land Company contacted Plaintiff to request that he assist her and a prospective purchaser in their search for a large building which could be converted into a multipurpose facility. While assisting Woodman, Plaintiff learned that a B.F. Goodrich plant in Miami, Oklahoma, was for sale. Subsequently, Plaintiff and Woodman accompanied the prospective buyer, Danny Wallis, on a tour of the Goodrich facility.

In all, Wallis met with Plaintiff on three or four occasions, and in November 1989, Wallis advised Plaintiff and Woodman that he would pay them $500,000 as a referral fee if he could buy the Goodrich facility for $2 million. Plaintiff testified that Defendant James Ray asked for $50,000 as his share of this fee and became angry when Plaintiff refused his proposition.

Defendant James Ray later told Plaintiff to obtain an Oklahoma real estate broker to assist in the Goodrich deal, since he was concerned about the legality of Plaintiff selling Oklahoma real estate without a license from that state. Plaintiff never did so, although he testified that a broker in Oklahoma was "contacted."

On January 17, 1990, Defendants James Ray and Connie Easley gave Plaintiff a letter warning him that if he discussed corporate business or problems with outsiders he would be terminated. Plaintiff admitted that prior to receiving the letter he had engaged in such discussions.

On January 24, 1990, Defendant James Ray became aware of a written communication from B.F. Goodrich officials to Plaintiff, which indicated that Plaintiff was still assisting Wallis in the proposed Goodrich plant purchase. Up to that point, Plaintiff had given Defendant James Ray no indication

that he was working with an Oklahoma broker. That evening all the Defendants met at the Re/Max office and agreed Plaintiff should be terminated.

The next day Defendant James Ray met with Plaintiff and told him he was being terminated for illegally selling real estate in Oklahoma.[2] Subsequently, Defendant James Ray returned Plaintiff's license to the Missouri Real Estate Commission. Defendants James Ray and Connie Easley later filed a complaint with the Missouri Real Estate Commission against Plaintiff because of the Goodrich deal. The complaint resulted in no disciplinary action against Plaintiff.

After his termination, Plaintiff continued in the real estate business, and in April 1990, he placed his license with another broker with whom he had become associated.

The appeals by Plaintiff and Defendants have been consolidated and will be addressed separately in this opinion. Additional facts will be noted as necessary to the disposition of this case.

### Defendants' Appeal No. 18331

Defendants present two assignments of error. Point I maintains that the trial court erred in denying Defendant's motion for directed verdict because Plaintiff's petition failed to allege facts sufficient to state a claim for tortious interference with a contract, in that there was no allegation of facts which, if proved, would establish absence of justification on the part of Defendants.

■ A defense of failure to state a claim upon which relief can be granted may be asserted at the trial on the merits, and such defense is never waived. *Sisco v. James,* 820 S.W.2d 348, 351 (Mo.App.1991); Rule 55.-27(g)(2).[3]

■ A petition is sufficient against a motion to dismiss if its allegations invoke substantive principles of law which entitle a plaintiff to relief and if it alleges facts which inform the defendant of what the plaintiff will attempt to prove at trial. *Friedman v.*

---

2. The Goodrich deal was never closed due to lack of financing.

3. Rule references are to Missouri Rules of Court (1993).

*Edward L. Bakewell, Inc.,* 654 S.W.2d 367, 368 (Mo.App.1983). "The facts stated in the petition are to be taken as true, and if the facts pleaded and the reasonable inferences to be drawn therefrom, viewed most favorably from the plaintiff's vantage point, show any ground for relief, the petition may not be dismissed." *Pillow v. General American Life Ins. Co.,* 564 S.W.2d 276, 279 (Mo.App. 1978). In determining the sufficiency of the petition to state a claim, conclusions of the pleader are not considered. *Cady v. Hartford Accident & Indem. Co.,* 439 S.W.2d 483, 485–86 (Mo.1969).

In addition, as Plaintiff reminds us, evidence presented at trial without objection results in an automatic amendment of the pleadings to conform to the evidence and the issues tried by consent. *Sparks v. Consol. Aluminum Co.,* 679 S.W.2d 348, 353 (Mo. App.1984); Rule 55.33(b). Therefore, our review will consider such evidence, in addition to the allegations made in Plaintiff's petition.

A claim for tortious interference with a contract or business relationship requires proof of each of the following:

"(1) A contract or a valid business relationship *or expectancy* (not necessarily a contract);

(2) Defendant's knowledge of the contract or relationship;

(3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;

(4) The absence of justification; and

(5) Damages resulting from defendant's conduct."

*Fischer, Spuhl, Herzwurm & Assoc., Inc. v. Forrest T. Jones & Co.,* 586 S.W.2d 310, 315 (Mo. banc 1979) (quoting *Salomon v. Crown Life Ins. Co.,* 536 F.2d 1233 (8th Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976)).

Summarized, Plaintiff's petition alleged that the parties formed GJAL and acquired the Re/Max franchise; that the parties entered into a shareholders' buy-sell agreement providing for the purchase of the shareholders' stock upon the happening of certain events; that Plaintiff owned an undivided interest in the Re/Max franchise; that the parties' agreements implied they would act in good faith and fairness to each other; and that Defendants' actions prevented Plaintiff from being a real estate salesman under the Re/Max franchise and from participating in GJAL, in which he had invested at least $10,000.

Specifically, Count II of the petition alleged, in part:

2. That during the period of time from September 16, 1988 and [sic] January 25, 1990, your Plaintiff was employed as a real estate salesman for Defendant, Greater Joplin Associates, Ltd.

3. That by virtue of said employment, the Plaintiff had a legitimate expectation of doing, and had a right to do business as a real estate salesman for the Defendant, Corporation.

4. That on or about January 25, 1990, Defendant, Jim Ray, with the consent and acquiescence of all Defendants, terminated the Plaintiff as a real estate salesman and caused his Missouri Real Estate License to be returned to the Missouri Real Estate Commission.

5. That the acts of the Defendants were done maliciously, were intentional, and were without just cause or excuse, and were for the purpose of preventing the Plaintiff from exercising his rights and privileges as a real estate salesman and to interfere with his business expectations arising therefrom and for the further purpose of forcing the Plaintiff, out of the Corporation, in which Plaintiff was a Shareholder and employee, and to deprive him of the rights and benefits from the Franchise Agreement entered into with Re/Max of Missouri.

Plaintiff points to additional evidence which he claims resulted in the amendment of his pleadings on the issue of lack of justification. He emphasizes that Defendants, being four of the five GJAL shareholders, met without him and agreed to fire him. He also highlights evidence that Defendants knew that if he was fired and his real estate license was returned to the Missouri Real Estate Commission, he could not participate in GJAL or benefit from the Re/Max franchise.

Finally, according to Plaintiff's testimony, Defendants knew that he would be required to sell his stock to Defendants at book value, which would be only pennies on the dollar under the buy-sell agreement.

Plaintiff asserts that his pleadings and proof sufficiently established that Defendants unjustifiably brought about his termination. Defendants, in contrast, contend that Plaintiff failed to allege or show any facts (much less sufficient facts) tending to prove a lack of justification or the use of improper means in inducing GJAL to terminate him.

In *Friedman*, the Court said "that one who has an economic interest in a contract cannot be held liable for inducing a breach thereof even though motivated by self interest, in the absence of pleading and proof that such self-interested purpose was accomplished by improper means." 654 S.W.2d at 369.

As stated in *Meyer v. Enoch*, 807 S.W.2d 156, 159–60 (Mo.App.1991):

> Improper means, for purposes of intentional interference with contract, are those means which are "independently wrongful, notwithstanding injury caused by the interference." *Community Title [Co. v. Roosevelt Federal Sav. and Loan Ass'n]*, *supra*, 796 S.W.2d [369] at 373 [ (Mo. 1990) ]. Examples of such means are wrongful acts recognized by statute or common law such as misrepresentation of fact, threats, violence, defamation, and restraint of trade. *Id.*

■ Here, there is no dispute that Defendants, as shareholders, had an economic interest in GJAL and in its business relationship with Plaintiff. In addition, assuming the truthfulness of Plaintiff's allegations, Defendants were motivated by self-interest. Nevertheless, Plaintiff still had to plead and prove that they accomplished their self-interested purpose by improper means. We fail to find any pleaded facts or proof that Defendants used improper means constituting an independently wrongful act to induce GJAL to terminate Plaintiff.

As to Defendants Colleen C. Ray, Connie J. Easley and John T. Easley, the only evidence presented on this issue revealed that they agreed with Defendant James Ray, the sole director, president and broker of GJAL, that Plaintiff should be fired for his unauthorized Oklahoma activities. This evidence falls far short of showing that they committed an independently wrongful act.

Plaintiff also failed to state facts sufficient to characterize the actions of Defendant James Ray as independently wrongful. Plaintiff alleges that he was an employee of GJAL, and his evidence does not reveal otherwise. Further, there is no evidence that Plaintiff was anything other than an employee-at-will. The recent case of *Eggleston v. Phillips*, 838 S.W.2d 80 (Mo.App.1992), holds that, for an employee-at-will to state a claim against a supervising employee for intentional interference with a contract or business relationship, he must present evidence eliminating any business justification for the termination—a level of proof which is close to impossible to achieve. *Id.* at 83.

Plaintiff testified that Defendant James Ray was his supervisor, and there is no dispute that Ray, as president of GJAL, had the authority to terminate him. Plaintiff also admitted showing the Oklahoma Goodrich plant to the prospective purchaser, Wallis, who was then placed in contact with the seller. In addition, Plaintiff testified that Wallis offered him a fee for his services if Wallis made a satisfactory purchase. At no time was Plaintiff licensed to sell real estate in Oklahoma; nor did he obtain an Oklahoma broker to assist him. In this regard, Plaintiff's activities were contrary to the instructions from his superior. These facts provide a justifiable business reason for Plaintiff's termination.

For Plaintiff to carry his burden of pleading and proving absence of justification, it was necessary to show that Defendants acted without belief that Plaintiff was illegally participating in the sale of real estate in Oklahoma. *Hill v. Kansas City Star Co.*, 719 S.W.2d 808, 812 (Mo.App.1986). Furthermore, even if Defendant James Ray, in concert with the other Defendants, failed to exercise sound business judgment in terminating Plaintiff, such a failure does not establish that Defendant James Ray acted without justification. "The lack of sound business judgment is not relevant to the issue."

*Green v. Beagle–Chilcutt Painting Co., Inc.,* 726 S.W.2d 344, 351 (Mo.App.1987). *See Luketich v. Goedecke, Wood & Co.,* 835 S.W.2d 504, 508–09 (Mo.App.1992).

■ A chief executive officer and shareholder of a corporation has an economic interest in the corporation to protect, and termination of an employee is privileged unless the evidence is substantial to establish that such official used improper means to protect that economic interest. *Green,* 726 S.W.2d at 352. "Stated another way, if an act or omission is privileged, it cannot be concluded that such act or omission was without justification, absent evidence that improper means were employed which destroyed the privilege." *Id.*

In his brief, Plaintiff discusses "improper means" in only one sentence. He states that Defendants "utilized an improper means, the firing of [Plaintiff], to effectively remove him from the Corporation and to force him to sell his common stock [to] them for Three Hundred Twenty Dollars ($320.00)." This argument obviously refers to the buy-sell agreement between the shareholders and the corporation—which is not the contract upon which Plaintiff bases his claim. How that argument aids Plaintiff eludes us. The central issue regarding improper means is whether Defendants induced GJAL to terminate Plaintiff by means which were independently wrongful, not whether Plaintiff suffered economic repercussions as a result of Defendants' actions.

We find that Plaintiff has failed to plead or offer proof that any of the Defendants used improper means to induce GJAL to terminate him as an employee. Notwithstanding the injury caused by Defendants' interference, Plaintiff has presented no allegations or evidence of independently wrongful acts. There is no showing that Defendants acted without belief that Plaintiff was illegally participating in the sale of Oklahoma real estate. For these reasons, the trial court erroneously failed to grant Defendant's motion for directed verdict.

In view of this finding, we need not discuss Defendants' second point or review Plaintiff's appeal.

The judgment against Defendants is reversed, and this cause is remanded for entry of judgment in favor of Defendants.

PARRISH, C.J., and SHRUM, J., concur.