**SSM HEALTH CARE, INC.,**
**Plaintiff–Appellant,**

v.

**Claude Joseph DEEN, M.D.,**
**Defendant–Respondent.**

No. 64947.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 6, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 1995.

David M. Harris, Lawrence S. Denk, John E. Petite, Greensfelder, Hemker & Gale, P.C., St. Louis, for appellant.

Richard J. Eisen, Julie K. Morian, Eisen, Gillespie & Hilton, Webster Groves, for respondent.

CRANDALL, Judge.

SSM Health Care, Inc., owner and operator of St. Mary's Health Center (St. Mary's), appeals from that portion of the trial court's judgment, entered pursuant to a jury verdict, in favor of defendant, Claude Joseph Deen, M.D. (Deen), on his counterclaim against St. Mary's for tortious interference with contract or business expectancy. The jury awarded Deen $50,000.00 on his counterclaim. The jury also found in favor of St. Mary's in the amount of $30,727.00 on St. Mary's claim for breach of contract against Deen. The trial court entered a consolidated judgment in favor of Deen in the amount of $19,223.00. We reverse that portion of the judgment entered in favor of Deen on his counterclaim; and pursuant to Rule 84.14, enter judgment in favor of St. Mary's.

Viewed in the light most favorable to the verdict on Deen's counterclaim, the evidence established that SSM Health Care was a not-for-profit corporation which owned and operated St. Mary's in Richmond Heights, Missouri. The Bellevue East Medical Building (medical building) was located across the street from St. Mary's, at 1035 Bellevue. The medical building was owned by SSM Properties and managed by SSM Health Care II, d/b/a Clayton Health Services.

Deen was a board-certified otolaryngologist, a physician who specialized in diseases and surgery of the ear, nose, and throat (ENT). In 1988, he completed his residency and began practicing at St. Mary's. He entered into a lease agreement for office space in the medical building. The lease named "Bellevue Medical Center" as the landlord.

The lease contained a provision that prohibited Deen from assigning the lease or subletting the leased premises "without first obtaining the prior written consent of the Landlord ..., which consent shall not be unreasonably withheld...."

St. Mary's loaned Deen $58,000.00 for the purchase of office furniture and medical equipment, and he executed a promissory note and security agreement in favor of St. Mary's. Deen also entered into an "assistance agreement" by which St. Mary's guaranteed him an annual salary of $125,000.00 during his first year in practice. Under the terms of the assistance agreement, St. Mary's subsidized Deen's monthly income so that he earned at least $10,000.00 per month. The money advanced was a loan which Deen was to repay to St. Mary's after his first year of practice. Pursuant to the assistance agreement, Deen borrowed $30,000.00.

Approximately two years later, in 1990, Deen encountered some difficulties in working at St. Mary's and decided to leave. He spoke with Sister Betty Brucker, the president of St. Mary's, and James Redington, M.D., the vice-president of medical affairs, about his decision. He then determined to sell his practice.

In an attempt to procure a buyer, Deen asked for assistance from William Friedman, M.D., an established ENT who had participated in Deen's training. Dr. Friedman was on courtesy staff at St. Mary's, which meant that a committee approved of his credentials to be on staff at St. Mary's but that he did not actively practice there. He was a prolific surgeon, whose practice was centered at Deaconess Hospital, a neighboring hospital and a competitor of St. Mary's. Dr. Friedman told Deen that he was interested in purchasing the practice.

On September 26, 1990, Deen spoke with Clayton Health Services and the director of physician services and informed them that he was negotiating to sell his practice to Dr. Friedman. He said that the sale of his practice was contingent upon his ability to sublease his office space to Dr. Friedman. At that time, Clayton Health Services gave verbal approval to Deen for the sublease.

On September 27, 1990, Deen entered into an agreement for the sale of his practice to Dr. Friedman. That same day, Sr. Betty and Dr. Redington communicated to Clayton Health Services that they did not approve of the sublease of Deen's office space to Dr. Friedman. St. Mary's did not sanction the sublease because St. Mary's did not want to extend active staff privileges to Dr. Friedman. Sr. Betty testified that Dr. Friedman's practice did not fit the needs of St. Mary's and that he would take his patients to Deaconess Hospital instead of St. Mary's. Clayton Health Services informed Deen of its decision to withhold consent to the sublease and terminated Deen's lease. Without the office space, Dr. Friedman declined to purchase Deen's practice. Deen moved to California, leaving the furniture and equipment in his office. In October 1990, St. Mary's wrote him a letter informing him that pursuant to the security agreement, it was retaining possession of his furniture and equipment. Eventually, St. Mary's sold some of the equipment to another ENT. At the time of trial, the remainder of the equipment and furniture was unsold.

St. Mary's brought the present action against Deen. In Count I, based on the promissory note, St. Mary's sought return of the money loaned to Deen for the office furniture and equipment. In Count II, on a breach of contract theory, St. Mary's sought return of the money loaned to Deen in accordance with the assistance agreement. Deen counterclaimed against St. Mary's, alleging that St. Mary's tortiously interfered with his lease and with the contract for his sale of the practice. At the close of the evidence, the trial court, on Deen's motion, granted directed verdict on Count I of St. Mary's petition. St. Mary's Count II was submitted to the jury and the jury returned a verdict in favor of St. Mary's in the amount of $30,727.00. On Deen's counterclaim, the jury returned a verdict in favor of Deen in the amount of $50,000.00. The trial court entered a consolidated judgment in favor of Deen in the amount of $19,223.00.

■ In its first point, St. Mary's claims the trial court erred in failing to grant its motion for directed verdict on Deen's coun-

terclaim for tortious interference with a contractual relationship or business expectancy, because Deen failed to adduce substantial evidence to support that claim.

▮ Interference with a contractual relationship or with a business expectancy is a tort recognized under Missouri law. *Honigmann v. Hunter Group, Inc.*, 733 S.W.2d 799, 806 (Mo.App.1987). Tortious interference with a business relationship or expectancy requires proof of the following elements:

(1) a contract or a valid business relationship or expectancy (not necessarily a contract);

(2) the defendant's knowledge of the contract or relationship;

(3) intentional interference by the defendant inducing or causing a breach of the contract or relationship;

(4) the absence of justification; and

(5) damages, resulting from the defendant's conduct.

*Murray v. Ray*, 862 S.W.2d 931 (Mo.App. S.D.1993). A plaintiff carries the burden of proof, *Honigmann*, 733 S.W.2d at 807, and must adduce substantial evidence supporting each and every element of this cause of action. *Francisco v. Kansas City Star Co.*, 629 S.W.2d 524, 529 (Mo.App.1981). If a plaintiff fails to establish substantial evidence of any one element, his tortious interference claim fails.

▮ Deen's counterclaim for tortious interference relates to St. Mary's interference with Deen's lease for space in the medical building and with Deen's business expectancy of selling his practice. Regardless of the theory upon which Deen seeks to recover, we focus on the element of the lack of justification when St. Mary's informed Clayton Health Services that it did not approve of the sublease. As part of the cause of action for a claim of tortious interference, Missouri is among those jurisdictions which require that plaintiff plead and prove the acts of the defendant inducing or causing the breach be without justification. *Francisco*, 629 S.W.2d at 533–534. Absence of justification is the absence of any legal right on the part of the defendant to take the actions about which a

plaintiff complains. *Meyer v. Enoch*, 807 S.W.2d 156, 159 (Mo.App.1991). One may be justified in interfering with a business relationship or expectancy if he has a legal right to do so. *Id.*

▮ Tortious interference cannot be predicated upon circumstances considered to be part of the competitive aspects of our free enterprise system. *Honigmann*, 733 S.W.2d at 807. One who has an economic interest in a business relationship or expectancy cannot be held liable for inducing a breach thereof even though motivated by self-interest, in the absence of pleading and proof that such self-interested purpose was accomplished by improper means. *Murray*, 862 S.W.2d at 935. Improper means, for purposes of intentional interference with a business relationship or expectancy, are those means which are independently wrongful, notwithstanding the injury caused by the interference. *Id.* Examples of improper means are those acts recognized by statute or common law as wrongful, such as misrepresentation of facts, threats, violence, defamation, and restraint of trade. *Id.*

In the case before us, there was substantial evidence that St. Mary's had an economic interest in the medical building and in which physicians leased office space there. Generally, physicians whose offices were located in the medical building admitted patients to St. Mary's. Dr. Friedman, on the other hand, practiced at, and admitted patients to, a neighboring hospital which was in competition with St. Mary's. Furthermore, although he was on courtesy staff at St. Mary's, Dr. Friedman did not perform surgery there. St. Mary's had an interest in ensuring that the physicians who leased space in the medical building admitted patients to St. Mary's and not to another hospital. In addition, Sr. Betty testified that St. Mary's did not want Dr. Friedman on active staff because his credentials did not meet the needs of the hospital. Therefore, in interfering with Deen's lease with Clayton Health Services and the attempted sublease of Deen's office space, St. Mary's was motivated by its own economic self-interest.

The burden still was upon Deen to plead and prove that St. Mary's accomplished its self-interested purpose by improper means. In his counterclaim, Deen pleaded that St. Mary's "intentionally and without justification interfered with and caused a breach of the [sic] both the lease agreement and the sales agreement with Dr. Friedman by communicating to SSM properties and SSM Healthcare II [Clayton Health Services] disapproval of and refusal to accept Dr. Friedman as a tenant in the building...." Deen failed to plead that St. Mary's employed an independently wrongful act to induce Clayton Health Services either to terminate its lease with Deen or to withhold its consent to the sublease. In addition, Deen did not adduce any evidence that St. Mary's performed an independently wrongful act when it interfered with Deen's existing lease and attempted sublease to Dr. Friedman.

Because Deen failed to prove an essential element of his claim for tortious interference with a business relationship or expectancy, he failed to support his counterclaim against St. Mary's on either of those theories. The trial court erred in refusing to grant St. Mary's directed verdict on Deen's counterclaim. St. Mary's first point is granted. In view of our holding, we need not address the remaining points of error raised on appeal.

That portion of the trial court's judgment entered in favor of defendant-Deen on his counterclaim against plaintiff-St. Mary's is reversed. Pursuant to Rule 84.14, we enter judgment in favor of St. Mary's in the amount of $30,727.00.

CRANE, P.J., and DOWD, J., concur.