**Steven M. ORR, M.D., Plaintiff,**

v.

**Richard F. BEAMON, et al., Defendants.**

**Civil Action No. 98–2361–GTV.**

United States District Court, D. Kansas.

Dec. 7, 1999.

Joseph R. Colantuono, Christopher J. Reedy, Wehrman & Colantuono, LLC, Leawood, KS, Robert L. Wehrman, Wehrman & Colantuono, L.L.C., Kansas City, MO, for Steven M Orr, M.D.

G. Peter Bunn, III, Ferree, Bunn, O'Grady & Rundberg, Chtd., Overland Park, KS, Daniel R. Jones, deVries & Associates, for Richard F. Beamon, M.D., Mark Holcomb, M.D., Barbara K. Holmes, M.D., Richard H. Rosenthal, M.D., Mark Scarborough, M.D., BHR Inc., BHR Partnership.

Kurt D. Tilton, Christopher F. Pickering, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for St. Joseph's Emergency Physicians, Inc.

## MEMORANDUM AND ORDER

G. THOMAS VanBEBBER, Chief Judge.

Plaintiff brings this action alleging violations of the Sherman and Clayton Acts, violations of Kansas and Missouri antitrust statutes, tortious interference with employment contract, tortious interference with business expectancy, fraudulent misrepresentation, and civil conspiracy by defendants. The case is before the court on defendants' Motion to Dismiss[1] Counts I,

---

1. In accordance with this court's ruling at the November 3, 1999 hearing, the court construes defendants' motion to dismiss as a motion for summary judgment pursuant to Fed. R.Civ.P. 56.

II, III (Doc. 77), defendants' Motion for Summary Judgment on Counts IV, V, VI, VII (Doc. 94), and third-party defendant's Motion for Summary Judgment (Doc. 72). For the reasons set forth below, defendants' motions are granted and third-party defendant's motion is denied.

## I. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court must consider the record in the light most favorable to the nonmoving party. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

## II. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on the evidence submitted with summary judgment papers viewed in a light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff Steven Orr is a physician who was an at-will employee of third-party defendant St. Joseph's Emergency Physicians, Inc. (SJEP) from July 1, 1988 until November 17, 1997. SJEP provides emergency room services to St. Joseph's Hospital in Kansas City, Missouri. Defendant BHR, Inc. provides billing services to medical practices located in Kansas and Missouri, including SJEP.[2] Individual defendants Richard Beamon, Mark Holcomb, Barbara Holmes, Richard Rosenthal, and Mark Scarborough are the sole shareholders, officers and directors of BHR, Inc. Defendant BHR Partnership is a general partnership comprised of the individual defendants. The shareholders of BHR, Inc. are identical to the partners of BHR Partnership.

At all relevant times, 2100 of the 3100 total outstanding shares of SJEP were controlled by Beamon, Holcomb, Holmes, Rosenthal, Scarborough, and either BHR Partnership or BHR, Inc. Even if BHR, Inc., and not BHR Partnership, owned 1600 shares of SJEP stock, defendants Beamon, Holcomb, Holmes, Rosenthal, and Scarborough controlled a supermajority of 2100 of the 3100 SJEP shares outstanding by virtue of their stock and their ownership of BHR, Inc.

---

**2.** BHR Partnership originally contracted with SJEP to provide billing services for SJEP in 1987. When BHR, Inc. was created in 1993, the billing agreement was assigned by BHR Partnership to BHR Inc.

In July 1997, the SJEP minority shareholders, including plaintiff, voted to seek bids for the billing services that were currently being provided by BHR, Inc. The minority shareholders thought that the BHR, Inc. billing contract charged SJEP an inflated rate. Plaintiff, as corporate secretary of SJEP, advocated seeking competitive bids. The majority shareholders of SJEP—also the shareholders BHR, Inc.—disapproved of the minority shareholders desire to seek competitive bids for billing services.

In August 1997, an SJEP shareholders meeting was scheduled for the purpose of reconstituting the board of directors. This meeting was postponed until September 15, 1997. At the September 15, 1997 meeting, all SJEP shareholders voted either in person or by proxy and a new SJEP board of directors was elected. The new board of directors was comprised of Holcomb, Holmes, Scarborough, and Patrick Greenwood. Plaintiff alleges that Holmes represented to the SJEP shareholders at the September 15th meeting that she had a valid proxy to cast 1600 votes of SJEP stock purportedly owned by BHR Partnership.

On November 17, 1997, the SJEP board of directors voted to terminate plaintiff. A letter from SJEP dated March 26, 1998, stated that plaintiff was dismissed for no cause. Beamon testified in his deposition that when the decision was made to terminate plaintiff, defendants were aware that plaintiff had engaged in intimate physical conduct with St. Joseph's Health Center employees while on duty as an SJEP employee.

Midwest Emergency Medical Services, P.C. hired plaintiff on January 1, 1998. Plaintiff does not allege that defendants, collectively or individually, have taken any steps to prevent him from becoming gainfully employed as an emergency room physician in the Kansas City metropolitan area.

## III. DISCUSSION: Defendants' Motions on Plaintiff's Claims

### A. Antitrust Claims

Counts I, II, and III of plaintiff's First Amended Complaint allege that defendants violated the Sherman Act, 15 U.S.C. §§ 1 and 2, section 4 of the Clayton Act, 15 U.S.C. § 15, and Kansas and Missouri antitrust statutes, K.S.A. § 50–101, et seq., K.S.A. § 50–801, and R.S.Mo. § 416.011 et seq. Defendants seek summary judgment on the ground that plaintiff lacks standing to pursue any antitrust violations. The court agrees.

Plaintiff agrees that the federal and Missouri antitrust statutes should be analyzed together. See Fischer, Spuhl, Herzwurm & Assoc., Inc. v. Forrest T. Jones & Co., 586 S.W.2d 310, 313 (Mo. en banc 1979) (Missouri antitrust statute should "be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes"). Plaintiff argues, however, that the Kansas antitrust statutes are broader than the federal statutes and should be analyzed separately. Plaintiff relies on a District of Kansas case that permitted an antitrust plaintiff to pursue his Kansas antitrust claims even though he did not have standing to pursue a claim under 15 U.S.C. § 15. See Reazin v. Blue Cross & Blue Shield of Kansas, Inc., 635 F.Supp. 1287 (D.Kan.1986). The court finds Reazin inapposite because the case is silent on the issue of Kansas antitrust standing. The court in Reazin discusses plaintiff's Kansas claims without addressing whether he had standing to bring such claims.

In finding no Kansas cases to the contrary, the court concludes that standing under the Kansas antitrust statutes requires an antitrust injury similar to that required under the Sherman and Clayton Acts. While recognizing that federal antitrust cases are not binding on the court in interpreting Kansas antitrust statutes, the court finds such cases sufficiently persua-

sive to guide its decision with regard to standing under Kansas law. *See Bergstrom v. Noah*, 266 Kan. 829, 974 P.2d 520, 531 (1999). The court therefore analyzes plaintiff's standing under counts I, II, and III together.

The Tenth Circuit has enumerated six relevant factors to determine whether a plaintiff has standing to pursue an antitrust claim:

(1) the causal connection between the antitrust violation and the plaintiff's injury; (2) the defendant's intent or motivation; (3) the nature of the plaintiff's injury—i.e., whether it is one intended to be redressed by the antitrust laws; (4) the directness or the indirectness of the connection between the plaintiff's injury and the market restraint resulting from the alleged antitrust violation; (5) the speculative nature of the damages sought; and (6) the risk of duplicative recoveries or complex damages apportionment.

*Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir.1995) (quoting *Sharp v. United Airlines, Inc.*, 967 F.2d 404, 406–07 (10th Cir.1992)).

 For the case now under consideration, the court's decision revolves around the third standing factor—the nature of the plaintiff's injury—because "standing cannot be established without an antitrust injury . . . ." *Sharp*, 967 F.2d at 407 (quoting *City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 652 n. 14 (10th Cir.1992)). "An antitrust injury is an 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful.' An injury which is merely causally linked in some way to an alleged antitrust violation is insufficient." *Id.* at 408 (quoting *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 962 n. 15 (10th Cir.1990) (citations omitted)). The court

concludes that plaintiff's injury, which arises out of the termination of his at-will employment, is simply not of the type the antitrust laws were intended to prevent.

"It is settled law that shareholders and employees do not have standing to sue for antitrust violations that injure a corporation." *Id.* (quoting *Jones v. Ford Motor Co.*, 599 F.2d 394, 397 (10th Cir.1979)). "[E]mployees simply cannot establish an antitrust injury when they lose their employment as a result of some allegedly anticompetitive activity directed at or involving their employer." [3] *Id.* Plaintiff alleges that defendants unreasonably restrained trade by conspiring to prevent SJEP from seeking competitive bids for billing services—an act the court finds to be directed at SJEP, with any injury being suffered by SJEP.

The Tenth Circuit has distinguished cases in which the antitrust violations were "directed against the blackballed party," such as when an employee was prevented from obtaining other employment. *Id.* n. 4 (quoting *Reibert*, 471 F.2d at 730–31). Plaintiffs "whose opportunities in the employment market have been impaired by an anticompetitive agreement directed at them as a particular segment of employees have suffered an antitrust injury under the governing standard." *Roman*, 55 F.3d at 544. Plaintiff does not allege that defendants, collectively or individually, have taken any steps to prevent him from becoming gainfully employed as an emergency room physician in the Kansas City metropolitan area, and nothing in the record shows the court that plaintiff's situation is similar to blackballed employees.

Plaintiff argues that he was terminated because he advocated seeking competitive bids and that his injury is an antitrust injury because his dismissal "was a necessary means to achieve the conspirators'

---

3. The court notes that a different result may be reached when employees are in essence "quasi-businessmen operating in a market carved out by their own aggressiveness and salesmanship qualities. Thus when their employers engaged in anticompetitive practices, the employees were directly injured by these violations." *Reibert*, 471 F.2d at 730. Plaintiff, a physician providing emergency room services, does not fall into this category.

illegal end ...." *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 746 (9th Cir.1984) (finding plaintiff had sustained antitrust injury because although he was not a competitor or consumer in the restrained market, "the injury he sustained was such an integral part of the scheme to eliminate competition"). Even assuming that *Ostrofe* would extend to plaintiff and that the Tenth Circuit would rule in harmony with the Ninth Circuit, plaintiff has failed to create a genuine issue of material fact that his discharge was a necessary means to accomplish the alleged anticompetitive practice. The court is unconvinced that plaintiff, as SJEP's corporate secretary or as a minority shareholder, stood in the way of the majority shareholders' decision not to seek competitive bids.

The court concludes that plaintiff lacks standing to bring his antitrust claims and grants summary judgment on counts I, II, and III.

### B. *Tortious Interference*

■ In counts IV and V, plaintiff alleges that defendants tortiously interfered with his employment contract and his business expectancy. Under Missouri law,[4] a claim for tortious interference with a contract or business expectancy requires proof of the following:

> (1) A contract or a valid business relationship or expectancy (not necessarily a contract); (2) Defendant's knowledge of the contract or relationship; (3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) The absence of justification; and (5) Damages resulting from defendant's conduct.

4. The parties agree that Missouri law applies to plaintiff's tort claims.

5. Plaintiff alleges in his facts that he was not a true employee-at-will because defendants were required to give him thirty days notice for termination without cause. The court has been unable to find any support for plaintiff's contention under Missouri law.

*Murray v. Ray*, 862 S.W.2d 931, 934 (Mo. Ct.App.1993) (quoting *Fischer, Spuhl, Herzwurm & Assoc., Inc. v. Forrest T. Jones & Co.*, 586 S.W.2d 310, 315 (Mo. banc 1979) (citations omitted)). For plaintiff, who was an employee-at-will,[5] to state a claim for intentional interference with a contract or business expectancy, "he must present evidence eliminating any business justification for the termination—a level of proof which is close to impossible to achieve." *Id.* at 935. Plaintiff admitted in his deposition that he had engaged in intimate physical conduct with employees of St. Joseph's Health Center while on duty as an SJEP employee. Further, when the decision was made to terminate plaintiff, defendants were aware of such intimate physical conduct.[6] This provides defendants with a justifiable business reason for plaintiff's termination.

Furthermore, under Missouri law, "one who has an economic interest in a contract cannot be held liable for inducing a breach thereof even though motivated by self interest, in the absence of pleading and proof that such self-interested purpose was accomplished by improper means." *Murray*, 862 S.W.2d at 935 (quoting *Friedman v. Edward L. Bakewell, Inc.*, 654 S.W.2d 367, 369 (Mo.Ct.App.1983)). Shareholders of a corporation have "an economic interest in the corporation to protect, and termination of an employee is privileged unless the evidence is substantial to establish that such official used improper means to protect that economic interest." *Id.* at 936 (citing *Green v. Beagle–Chilcutt Painting Co., Inc.*, 726 S.W.2d 344, 352 (Mo.Ct.App.1987)). "Stated another way, if an act or omission is privileged, it cannot be concluded that such act

6. Plaintiff argues that his intimate physical conduct is immaterial because a letter from SJEP dated March 26, 1998, states that he was discharged for no cause. The reason defendants gave for plaintiff's termination isn't controlling in proving absence of justification. Defendant Beamon testified in his deposition that defendants were aware of plaintiff's intimate physical conduct when the decision was made to terminate him.

or omission was without justification, absent evidence that improper means were employed which destroyed the privilege." *Id.* "Improper means, for purposes of intentional interference with contract, are those means which are 'independently wrongful, notwithstanding injury caused by the interference.' Examples of such means are wrongful acts recognized by statute or common law such as misrepresentation of fact, threats, violence, defamation, and restraint of trade." *Id.* at 935 (quoting *Meyer v. Enoch,* 807 S.W.2d 156, 159–60 (Mo.Ct.App.1991) (internal citations omitted)).

Plaintiff contends that defendants used improper means to terminate him by misrepresenting that BHR Partnership—and not BHR, Inc.—owned the SJEP stock when the new board of directors was elected, by considering using threats of termination for physicians who opposed the billing contract, and by restraining trade. The court concludes that these do not amount to defendants using improper means to terminate plaintiff. Whether BHR Partnership or BHR, Inc. owned the SJEP stock is not material as discussed in the following section. *See* discussion *infra* section C. Plaintiff himself admits that defendants merely considered the threat of dismissal as an option for those who opposed the billing contract. Finally, any restraint of trade occurred after plaintiff was terminated, as opposed to being the means used to terminate plaintiff. Plaintiff's contention that defendants employed improper means to terminate him is without merit. Because plaintiff cannot present evidence eliminating any business justification for his termination, the court grants summary judgment with respect to this claim.

### C. Misrepresentation

█ In count VI, plaintiff alleges that defendant Holmes misrepresented to the SJEP shareholders at the September 15th meeting that she had a valid proxy to cast 1600 votes of SJEP stock purportedly owned by BHR Partnership. Plaintiff contends that the board of directors selected at this meeting was not properly elected because BHR Partnership did not·own the stock it voted. Instead, plaintiff argues that BHR, Inc. actually owned the SJEP stock. Under Missouri law, a claim for fraudulent misrepresentation requires proof of the following:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) the speaker's intent that the representation should be acted on by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) his right to rely thereon; and (9) the hearer's consequent proximately-caused injuries.

*Zipper v. Health Midwest,* 978 S.W.2d 398, 414 (Mo.Ct.App.1998).

After careful consideration of the record, the court fails to find any materiality as to whether BHR, Inc. or BHR Partnership actually owned the SJEP shares. Plaintiff contends that the misrepresentation was material because all of the shareholders presumed that BHR Partnership was entitled to vote and owned the majority of the shares. Plaintiff, however, does not controvert the fact that even if BHR, Inc.—and not BHR Partnership—owned the 1600 shares of SJEP stock, defendants Beamon, Holcomb, Holmes, Rosenthal, and Scarborough still controlled a supermajority of 2100 of the 3100 SJEP shares outstanding by virtue of their stock and their ownership of BHR, Inc. The shareholders of BHR, Inc. are identical to the partners of BHR Partnership—both being the individual defendants in this case. Because the same individuals controlled both entities, stock ownership by either would have produced the same vote. Plaintiff's misrepresentation claim lacks materiality, and the court grants summary judgment on this claim.

### D. Civil Conspiracy

█ Plaintiff's last count alleges that defendants engaged in a civil conspiracy to

prevent SJEP from entertaining competitive bids, to terminate plaintiff, and to renew the billing contract. "Conspiracy is not itself actionable in the absence of an underlying wrongful act or tort." *Williams v. Mercantile Bank*, 845 S.W.2d 78, 85 (Mo.Ct.App.1993). Because the court has found that plaintiff lacks standing to bring his antitrust claims, and has granted summary judgment on the underlying torts, plaintiff's claim for civil conspiracy fails.

### IV. DISCUSSION: Third–Party Defendant's Motion for Summary Judgment

Third-party defendant SJEP seeks summary judgment on third-party plaintiffs' indemnity claim on the ground that plaintiff's claims allege intentional and willful misconduct and Missouri law precludes indemnification for expenses arising out of willful or fraudulent misconduct. The SJEP bylaws provide for indemnification of directors and officers in the following situation:

> When a person is sued, either alone or with others, because he is or was a director or officer of the corporation, or of another corporation serving at the request of this corporation, in any proceeding arising out of his alleged misfeasance or nonfeasance in the performance of his duties or out of any alleged wrongful act against the corporation or by the corporation, he shall be indemnified for his reasonable expenses, including attorneys' fees incurred in the defense of the proceeding, if both of the following conditions exist:
>
> (a) The person sued is successful in whole or in part, or the proceeding against him is settled with the approval of the court.
>
> (b) The court finds that his conduct fairly and equitably merits such indemnity.

■ Although plaintiff's substantive claims have failed, there remains the issue of indemnification of third-party plaintiffs' expenses and attorneys' fees. The court concludes that third-party defendant has failed to meet its initial burden of demonstrating the absence of a genuine issue of material fact. Based on the record, the court concludes that a genuine issue of material fact exists with respect to third-party plaintiffs' indemnification claim for their expenses and attorneys' fees.

IT IS, THEREFORE, ORDERED that defendants' Motion to Dismiss Counts I, II, III (Doc. 77) is granted; defendants' Motion for Summary Judgment on Counts IV, V, VI, VII (Doc. 94) is granted; and third-party defendant's Motion for Summary Judgment (Doc. 72) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**