James **LONDOFF**, Plaintiff/Appellant,

v.

**WALNUT STREET SECURITIES, INC. and Arthur Montgomery, Defendants/Respondents.**

No. ED 87301.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 17, 2006.

Rehearing Denied Dec. 14, 2006.

**4**

Susan M. Andorfer, Belleville, IL, for appellant.

Christopher Andrew Perrin, St. Louis, MO, William Henry Barrett—co-counsel, John A. Berg—co-counsel, Chicago, IL, for respondent Walnut Street Securities, Inc.

Michael A. Wolff, Clayton, MO, for respondent Arthur Montgomery.

SHERRI B. SULLIVAN, J.

*Introduction*

James Londoff (Appellant) appeals from the trial court's summary judgment entered in favor of Walnut Street Securities, Inc. (Walnut Street) and Arthur Montgomery (Montgomery) (collectively Respondents). We affirm in part and reverse in part.

1. The Partnership Agreement in its entirety provides:

PARTNERSHIP AGREEMENT

David D. Ward (Ward) and James R. Londoff (Londoff) have agreed to enter into an equal partnership, regarding commissions and trails on any existing and future securities and insurance business with Walnut Street Securities, Inc. and Met Life Insurance Co. (formerly, General American Life Inc. Co.) with any business written on or after August 8, 2002, and shall have a Walnut Street Securities account number # 73772. The previous WSS account # for Ward was 1050, and for Londoff was 4664. The present Pershing Account # for Ward is B84, and Londoff is HH*.

In the event of death of either partner, the deceased partner's interest shall belong, and

*Factual and Procedural Background*

Walnut Street is a securities broker/dealer through which licensed registered representatives transact securities sales in exchange for which Walnut Street pays them commissions. At the time relevant to the issues in this case, Appellant worked as a registered representative of Walnut Street. David Ward (Ward) was also a registered representative of Walnut Street and a manager of one of its branch offices. Ward was Appellant's manager and securities supervisor, and Appellant worked at Ward's branch office.

Montgomery was also a registered representative of Walnut Street, and a manager of one of its branch offices.

In March 2000, James Haberberger became the new Manager of the branch office where Ward and Appellant worked. Ward developed cancer in 2002. In summer 2002, the branch office where Ward and Appellant worked was closed. As a result, on August 2, 2002, both Ward and Appellant were assigned to Montgomery's branch.

*Partnership Agreement*[1]

On August 8, 2002, Ward and Appellant entered into a Partnership Agreement.

automatically transferred, to the remaining partner, but the remaining partner shall continue to send to deceased partner's estate, 50% of commissions received monthly by the partnership for up to 1 year after death of said partner. Neither partner shall be liable for any legal action brought against the other partner, which occurred prior to this partnership.

This agreement shall be binding to both partners, but may be canceled by either partner upon at least 30 days written notice to the other partner.

AGREED:

(signed)              (signed)
David D. Ward      James R. Londoff
Dated: Aug. 8, 2002

The Partnership Agreement provided that Ward and Appellant were each entitled to an equal share of all "commissions and trails on any existing and future securities and insurance business with Walnut Street" for any business written on or after August 8, 2002. The Partnership Agreement also provided that in the event of the death of either partner, "the deceased partner's interest shall belong, and automatically transferred, to the remaining partner, but the remaining partner shall continue to send to deceased partner's estate, 50% of commissions received monthly by the partnership for up to 1 year after death of said partner."

### Business Continuation Plan[2]

On December 6, 2002, Montgomery and Ward signed a "Business Continuation Plan" which transferred all accounts under Ward's representative number to Montgomery, of which Montgomery was to share 50% with Appellant and the other 50% Montgomery was to pay to Ward for 12 months.

On December 11, 2002, Montgomery sent letters to Ward's clients informing them that Ward was retiring, that Montgomery was his Branch Manager, and that Ward and he were working together to service them. On February 2, 2003, Ward died. Appellant quit Walnut Street on January 22, 2004.

Appellant filed a petition against both Montgomery and Walnut Street for intentional interference with business expectancy.[3] In his petition, Appellant alleged that Montgomery transferred accounts away from Appellant, which belonged to Appellant pursuant to the Partnership Agreement, and interfered with Ward's and Appellant's interest in the Partnership Agreement. Appellant further alleged in the Petition that both Montgomery and Walnut Street intentionally interfered with Appellant's business relationship with customers and accounts by transferring away from Appellant the commissions generated by those accounts which belonged to Appellant pursuant to the Partnership Agreement.

Both Walnut Street and Montgomery filed motions for summary judgment. The trial court granted both motions. Appellant filed a Motion to Vacate, Reopen, Amend or Modify the Judgment, which the trial court denied. Appellant now appeals.

### Points on Appeal

Appellant presents three points on appeal. In Appellant's first point, he claims that the trial court erred in granting Walnut Street's and Montgomery's motions for summary judgment because a genuine issue of material fact exists as to Appellant's contract or valid business expectancy.

In Appellant's second point, he maintains that the trial court erred in granting

---

**2.** The Business Continuation Plan in its entirety provides:

Business Continuation Plan for David Ward
All Pershing accounts currently under rep # JM6 will be turned over to Arthur Montgomery and James Londoff on a 50% split. This agreement can be canceled by either party with a 30–day notice for reasonable cause. 100% of the commissions and trails paid to Arthur Montgomery will be passed through to David Ward for 12 months 1 year from the date of execution of this contract.

(signed) 12-6-02                 (signed) 12/6/02
Arthur Montgomery                David Ward
(signed)                         (signed)
Greg Ward                        Regi Jonak
Witness                          Witness

**3.** Appellant's petition originally included four counts, but Appellant voluntarily dismissed two and he is not appealing the trial court's summary judgment ruling on a third. The only count at issue on appeal is the one for intentional interference with business expectancy.

Montgomery's motion for summary judgment because Montgomery did not have to consent to, or approve the Partnership Agreement in order for the Partnership Agreement to be a contract or valid business expectancy.

In Appellant's third point, he argues that the trial court erred in granting Walnut Street's and Montgomery's motions for summary judgment because Appellant has produced evidence to support Respondents' knowledge of the contract or relationship, a breach induced or caused by Respondents' interference, the absence of justification, and damages.

### Standard of Review

Whether summary judgment should have been granted is a question of law and, therefore, reviewed de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The evidence is viewed in the light most favorable to the party opposing summary judgment. *Id.* Summary judgment is proper where the movant establishes that there is no genuine dispute as to the material facts and that she is entitled to judgment as a matter of law. *Id.* at 380. The movant must demonstrate either: (1) facts negating one or more elements of the non-moving party's claim; (2) that the non-moving party cannot and will not be able to prove one or more elements of its claim; or (3) that there is no material dispute about each fact necessary to establish an affirmative defense. *Id.* at 381.

### Discussion

For purposes of simplicity and clarity, instead of addressing Appellant's appeal point by point, our analysis in this case is only two-fold. First, we address whether Walnut Street has established any facts negating one or more elements of Appellant's claim of intentional interference with business expectancy against it. Second, we perform the same analysis with regard to Montgomery.

■ Interference with a contractual relationship or with a business expectancy is a tort recognized under Missouri law. *SSM Health Care, Inc. v. Deen*, 890 S.W.2d 343, 346 (Mo.App. E.D.1994).

■ The elements of a claim for intentional interference with business expectancy are:

(1) a contract or a valid business relationship or expectancy (not necessarily a contract);

(2) the defendant's knowledge of the contract or relationship;

(3) intentional interference by the defendant inducing or causing a breach of the contract or relationship;

(4) the absence of justification; and

(5) damages, resulting from the defendant's conduct.

*Id.* To prevail on this tort claim, a party must adduce substantial evidence supporting each and every element. *21 West, Inc. v. Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 870 (Mo.App. E.D.1995). If the presence of any of these elements is lacking against either respondent, that respondent is entitled to judgment as a matter of law.

### Walnut Street

■ Appellant's and Ward's Registered Representative contracts that they had both signed with Walnut Street prohibited them from assigning their interest in commissions, without the express prior written consent of Walnut Street. Ward's contract with Walnut Street provided as follows:

[The] Representative may not assign, pledge, or encumber in any way all or any part of his interest under this

Agreement without the prior written consent of [Walnut Street].

However, the Partnership Agreement purported to assign Ward's commissions to Appellant, and express prior written consent had never been obtained from Walnut Street. The Partnership Agreement stated that after Ward died, his interest in commissions would be transferred to Appellant:

> In the event of the death of either partner, the deceased partner's interest shall belong, and automatically [be] transferred, to the remaining partner, but the remaining partner shall continue to send to deceased partner's estate, 50% of commissions received monthly by the partnership for up to 1 year after death of said partner.

Because the Partnership Agreement was in violation of Ward's and Appellant's agreements with Walnut Street by assigning Ward's commissions to Appellant, and express prior written consent was never obtained from Walnut Street, Appellant cannot have a valid business expectancy in commissions received pursuant to the Partnership Agreement. Without being able to establish the first element of his cause of action for intentional interference with a business expectancy, Appellant has no claim against Respondents who were therefore entitled to judgment as a matter of law on this claim.

Appellant argues that the Partnership Agreement did not actually provide for the assignment of commissions, but rather installment payments that Appellant was required to make to Ward in order to purchase his book of business. However, the Partnership Agreement specifically provides that: "In the event of death of either partner, the deceased partner's interest shall belong, and automatically [be] transferred, to the remaining partner." Furthermore, it states that the surviving partner would "send to [the] deceased partner's estate, 50% of the commissions received ... by the partnership." These provisions plainly provide for assigning commissions.

Appellant also maintains that even though he never sought nor obtained written prior consent from Walnut Street for the assignment of his and Ward's commissions, he thought that he had obtained consent from Walnut Street by showing Montgomery the Partnership Agreement. However, he did not show the agreement to Montgomery until a month after it was consummated and thus no prior consent could possibly have been given by Montgomery, much less by Walnut Street. Furthermore, Appellant presents no evidence to back up his argument that Montgomery was an agent of Walnut Street with implied authority to give its consent. Montgomery is an independent contractor.

Appellant also argues that Walnut Street implicitly consented after the fact by approving a form letter Appellant sent to clients regarding his partnership with Ward, stating that Appellant would assist the clients when Ward was unavailable. However, this approval does not constitute knowledge or approval of the Partnership Agreement, and it certainly does not constitute written or prior approval, in that the letters were sent after the consummation of the Partnership Agreement.

Appellant additionally claims that Montgomery set up a split account for Ward and Appellant, which shows that Walnut Street consented to the Partnership Agreement. However, this split account was unrelated to the Partnership Agreement, and does not imply Walnut Street's consent to the Partnership Agreement. In addition, as pointed out earlier in this opinion, none of these arguments even address the fact that Walnut Street's consent was required to be in writing, and most impor-

tantly, prior to any assignment of commissions. The absence of this consent alone negates the first element of Appellant's claim. Appellant could not have had a valid business expectancy in the Partnership Agreement which assigned commissions without ever obtaining the prior written consent of Walnut Street.

This discussion resolves Appellant's first and third points with regard to Walnut Street.[4]

### Montgomery

■ Appellant maintains that Montgomery, as opposed to Walnut Street, did not have to consent to, or approve the Partnership Agreement in order for the Partnership Agreement to be a contract or valid business expectancy. However, Montgomery's consent or approval of the agreement is irrelevant. The Partnership Agreement itself was invalid in its attempt to assign commissions, and thus the alleged contractual right to the commissions does not exist. Thus any expectation in regards to the commissions is unfounded and unreasonable. "In order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged. If it is not, there was nothing for defendants to have interfered with." *Service Vending Co. v. Wal–Mart Stores, Inc.,* 93 S.W.3d 764, 769 (Mo.App. S.D.2002).[5]

■ As such, Appellant could have no valid business expectancy in the assign-

ment of commissions set forth in the Partnership Agreement for the reasons hereinbefore stated under the discussion of Walnut Street's entitlement to summary judgment. Therefore there is no valid business expectancy with regards to these commissions with which Montgomery can interfere. For this reason, Montgomery has shown facts which negate the first element of Appellant's claim for intentional interference with business expectancy against Montgomery in regards to the assigned commissions Appellant expected to receive by virtue of the Partnership Agreement, and so Montgomery is entitled to judgment as a matter of law on this claim as well at least in regards to the commissions.

■ Appellant asserts other business expectancies with which he claims Montgomery interfered, such as "getting the business of" Ward's clients, and trails on any existing and future securities and insurance business. Appellant maintains that the Partnership Agreement was a contract between Ward and Appellant that "would allow for clients to continue to be served without interruption after Ward's departure." Appellant claims that the Partnership Agreement was entered into "for the purpose of, and to facilitate Appellant purchasing Ward's book of business." Appellant concludes that he "did not merely have a hope of establishing a business relationship with Ward; he in fact *had* established a business relationship with Ward as evidenced by their contract, the

---

4. Our resolution of Appellant's first point with regard to Walnut Street renders Appellant's third point with regard to Walnut Street moot, because the failure of the establishment of the first element of his claim renders the existence of the remaining elements meaningless.

5. For a good discussion of this principle, see *Wenthe v. Willis Corroon Corp.,* 932 S.W.2d

791, 798 (Mo.App. E.D.1996) (J. Crahan, concurring in part and dissenting in part): "If the pleadings establish that the alleged contractual right does not exist or that any expectancy was not reasonable and valid under the circumstances alleged, it follows that there was nothing for the defendant to interfere with."

Partnership Agreement." (Emphasis in original.)

Aside from the receipt of commissions, Appellant has set forth some business expectancies valid on their face and not prohibited by his agreement with Walnut Street. There are no contract terms to dictate whether or not these claims were justified or reasonable, cf., *Service Vending Co.*, 93 S.W.3d at 770 (SVC's claimed expectancy was, as a matter of law, neither reasonable nor valid in view of the terms of the contract which provided that Wal-Mart could terminate the agreement at any time and remove SVC's equipment), or rule of law prohibiting these alleged expectations, cf., *Misischia v. St. John's Mercy Medical Center*, 30 S.W.3d 848, 863 (Mo. App. E.D.2000) (the general rule in Missouri is that the exclusion of a physician from practicing in a private hospital is a matter which rests in the discretion of the managing authorities.) In light of this, we find that the issues of whether or not Appellant's business expectancies were reasonable, and whether or not Appellant is credible in his assertions as to his expectancies, are matters best left for a jury to decide as an issue of fact, rather than for us to decide as an issue of law.

We note that Appellant has also set forth sufficient facts to support the second and third elements of his claim, i.e., that Montgomery knew of the Partnership Agreement and/or business relationship between Appellant and Ward, and that Montgomery intentionally interfered with the agreement and relationship between Appellant and Ward, causing Ward to breach the Partnership Agreement by entering into the Business Continuation Plan with Montgomery. The establishment and proof of the remaining elements of justification and damages necessarily flow from the establishment and proof of the first three elements to the jury, and therefore are inappropriate for summary judgment as well.

For these reasons, we find that Appellant is precluded as a matter of law to assert that Montgomery tortiously interfered with his receipt of commissions pursuant to the Partnership Agreement, but his remaining allegations of business expectancy are not properly precluded by summary judgment.

As such, Appellant's points on appeal are denied as to Walnut Street; denied as to Montgomery only with regard to Appellant's expectancy of commissions flowing from the Partnership Agreement; and granted as to all remaining business expectancy claims against Montgomery.[6]

The judgment of the trial court is affirmed in part and reversed in part, in accordance with this opinion.

ROY L. RICHTER, P.J., and PATRICIA L. COHEN, J., concur.

---

**6.** Our conclusion resolves Appellant's first and third points with regard to Montgomery, and Appellant's second point in its entirety.