

# NUMBER 13-13-00309-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF J.K.K.B., A CHILD

**On appeal from the County Court at Law No. 5
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Longoria
Memorandum Opinion by Justice Perkes**

Following a bench trial, the trial court terminated K.S.'s ("Mother") parental rights to J.K.K.B.[1] By one issue, Mother argues the evidence is legally and factually insufficient to support the finding that termination of her parental rights is in the best interest of J.K.K.B. We affirm.

---

[1] In termination of parental rights appeals, we use aliases to protect the minor's identity. *See* TEX. R. APP. P. 9.8.

## I.   BACKGROUND

J.K.K.B. lived alone with her father.   After her father attempted suicide, the Department of Family and Protective Services ("Department") filed a petition for protection of a child, for conservatorship, and for termination of parental rights.   J.K.K.B. was ten years old when the Department filed its petition.

J.K.K.B.'s mother is living in a mental health facility in Missouri.   Jessica Maniglia, a Department caseworker, testified that it is impossible for J.K.K.B. to live with her mother at the mental health facility.   Both Maniglia and the Court Appointed Special Advocate opined that termination of Mother's rights is in J.K.K.B.'s best interest.   Maniglia characterized J.K.K.B. as "very active, into tumbling and gymnastics[,]" and she observed that J.K.K.B. loves to sing.   Maniglia recommended that J.K.K.B. be adopted by a family that can nurture J.K.K.B.'s artistic interests.

The trial court took judicial notice that the Department served Mother in June 2012 with the termination petition.   Since then, the Department has been J.K.K.B.'s temporary managing conservator.   Maniglia testified that Mother failed to comply with the Department's family service plan, which was admitted into evidence without objection. In it, the Department expressed concern that Mother had not contacted J.K.K.B. in five to eight years.   The service plan recites Mother's criminal history, which includes several drug-related crimes, domestic assault, criminal trespass, making a false report, sexual exploitation of a minor, sexual conduct with a minor, crime against a child, contributing to the delinquency of a minor, and aggravated assault of a healthcare professional.   The

2

service plan notes that Mother was committed to a mental health facility upon being deemed incompetent to stand trial for "breaking the boundaries of her probation."

Doctor James Bradley Reynolds, a forensic psychiatrist and medical director and chief clinician at the mental health facility, testified as an expert witness. He explained how Mother became a resident in the facility after a trial court deemed her incompetent to stand trial. He said Mother has since been deemed permanently incompetent and not restorable. He provided Mother's diagnoses: major depression with psychotic features, polysubstance dependence, dementia due to Huntington's disease, and borderline personality disorder. Dr. Reynolds testified that the Huntington's disease is progressive, noting, "I do not foresee these conditions going into remission in the foreseeable future or her suddenly not being handicapped by these very serious mental illness issues."

Dr. Reynolds affirmed that his records showed Mother had "a number" of mental health hospitalizations throughout her life. He testified that she "demonstrated a lot of behavioral discontrol" when she was admitted to the facility. "She would lose her temper unpredictably and aggressively," causing the facility staff to be "very cautious because of the magnitude of the physical and verbal aggressiveness that she had been displaying to herself and others . . . ." He also related two recent outbursts, which he thought "would be a very terrifying experience for a young child to experience if they were in the home with her." Dr. Reynolds, when asked about Mother's ability to care for a young child, responded:

> Well, at the present time, I think that would be very unlikely for her to give a young child the kind of support and care and structure that a child

would typically want to have to be successful in their growing up years and have a good chance at a success as an adult. My concern, particularly knowing with my familiarity with this lady and the behaviors we've observed now that have been unfortunately very consistent for a long period of time, is that her own individual emotional needs and mental issues would far outshadow her ability to provide a stable home environment for a child.

I'm very, very concerned that it would be highly likely that if she were out in the community without sufficient structure to basically keep her in check, that she would revert to the problems that brought her into our system in the first place, namely seeking continuing relief from her sensations of pain, whether that would be from shopping around with doctors to obtain more and more prescription painkillers or possibly turning back to illegal means to try to meet her needs. And that would be extremely prejudicial to the care and environment of a young child, I would think.

When asked whether it would be in J.K.K.B.'s best interest to be reared by Mother, Dr. Reynolds answered, "[I]n my opinion, a child in general would not be in a good environment given the behaviors and the mental health conditions that I've observed with [Mother] if [Mother] were the caregiver for the child in the community." Dr. Reynolds elaborated:

[I]n my opinion, she would have so much difficulty in maintaining her own self and her own needs in an acceptable fashion, that she would have very little time and energy left to attend to those children. I think she would tell you, and she has told me repeatedly, that she loves her children and that she would want to stay as their parent, but unfortunately, and this is very hard for me as a clinician to have to state, I don't think she would have that capacity to carry through with that in an appropriate, meaningful fashion.

Dr. Reynolds testified that he does not expect Mother's condition to improve in the future. He stated, "[I]t's not substantially likely at all in the foreseeable future that she would be in a state where she could care for herself, much less any children, without extremely close supervision and structure." He also noted that Huntington's disease can

4

cause premature death, and stated it was "fair to say that her years of useful quality of life are numbered . . . ."

The trial court found termination of Mother's parental rights was in J.K.K.B.'s best interest, *see* TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2011), and terminated Mother's rights under Texas Family Code sections 161.001(1)(C), 161.001(1)(N), and 161.003. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(C), (N) (West Supp. 2011), 161.003 (West 2008).[2] Mother only appeals the trial court's best-interest finding.

---

[2] Subsection 161.001(1)(C) provides:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months[.]

TEX. FAM. CODE ANN. § 161.001(1)(C) (West Supp. 2011). Subsection 161.001(1)(N) authorizes termination if the court finds by clear and convincing evidence that the parent:

> constructively abandoned the child who is the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:
>
> > (i) the department or authorized agency has made reasonable efforts to return the child to the parent;
> >
> > (ii) the parent has not regularly visited or maintained significant contact with the child; and
> >
> > (iii) the parent has demonstrated an inability to provide the child with a safe environment[.]

*Id.* § 161.001(1)(N) (West Supp. 2011).

> Under subsection 161.003, a trial court can terminate parental rights if the court finds that:
>
> (1) the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child;
>
> (2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide the child's needs until the 18th birthday of the child;
>
> (3) the department has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination held in

## II. BEST INTEREST

By her sole issue, Mother argues the evidence is legally and factually insufficient to support the finding that termination is in J.K.K.B.'s best interest.[3] We disagree.

### A. Standard of Review

To terminate parental rights, a trial court must find by clear and convincing evidence that the parent committed an act prohibited by section 161.001(1) of the Texas Family Code and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1)–(2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). "Clear and convincing evidence" is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Evidence proving one of the prohibited acts or omissions under section 161.001(1) may also be probative to the best-interest determination. *In re C.H.*, 89 S.W.3d at 28. A best-interest analysis may be based on direct evidence, circumstantial evidence, subjective factors, and the totality of evidence. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.); *see In re S.H.A.*, 728 S.W.2d 73, 86–87 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *see also In re A.M.*, No.

___

accordance with subsection (c);

(4) the department has made reasonable efforts to return the child to the parent; and

(5) the termination is in the best interest of the child.

*Id.* § 161.003(a) (West 2008).

[3] In her brief, appellant states that she "concedes all elements except that the evidence was legally and factually insufficient to support termination under the best interest element required under both Tex. Fam. Code § 161.001 and 161.003."

13-12-00767-CV, 2013 WL 1932903, at *25 (Tex. App.—Corpus Christi May 9, 2013, no pet.) (mem. op.).

In reviewing the legal sufficiency of the evidence supporting termination of parental rights, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d at 85. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could have done so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.* However, we must also consider undisputed evidence, if any, that does not support the finding. *Id.* at 86.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings and not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact finder could reasonably form a firm conviction or belief that termination of the parent-child relationship would be in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(2); *In re C.H.*, 89 S.W.3d at 26. The evidence is factually insufficient if the disputed evidence that a reasonable fact finder would not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction in the truth of its finding. *In re H.R.M.*, 209 S.W.3d at 108.

## B.    Applicable Law

There is a strong presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131(b) (West 2008); *In re R.R.*, 209 S.W.3d

112, 116 (Tex. 2006) (per curiam). When determining if termination is in the child's best interest, the following list of factors should be considered:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive, and there is no requirement that the Department prove all factors as a condition precedent to termination. *In re C.H.*, 89 S.W.3d at 27. In some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *Id.*

When the Department is the petitioner, section 263.307(b) of the Texas Family Code lists thirteen factors that the court should consider in determining whether a parent is "willing and able to provide the child with a safe environment." *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2008). We give consideration to these factors to the extent applicable. *See In re R.R.*, 209 S.W.3d at 116; *In re J.J.C.*, 302 S.W.3d 436, 447–48

8

(Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see also In re R.S.*, No. 13-09-00368-CV, 2010 WL 877567, at *2 (Tex. App.—Corpus Christi Mar. 10, 2010, no pet.) (mem. op.).

## C. Analysis

### 1. J.K.K.B.'s Desires

Maniglia testified that J.K.K.B. prefers to be adopted as an only child or by a family with children her age or older and wants "someone who can answer her questions about science and can take her on trips and outings." The attorney ad litem asked Maniglia, "[H]as she [J.K.K.B.] changed her mind as far as wanting to be adopted?" Maniglia responded that J.K.K.B. had not. This factor weighs in favor of termination.

### 2. J.K.K.B.'s present and future physical and emotional needs; present and future emotional and physical danger to J.K.K.B.; Tex. Fam. Code Ann. § 263.307(b)(8)

Mother concedes the sufficiency of the evidence to support the trial court's findings under section 161.003, thus conceding that her mental health precludes her from providing "for the physical, emotional, and mental needs of the child." *See* Tex. Fam. Code Ann. § 161.003(a)(1); *see also id.* § 263.307(b)(6) (providing that parent's psychiatric or psychological health is a factor regarding whether the parent can provide a safe environment). She also concedes that the illness or deficiency not only presently hampers her ability to care for J.K.K.B. but will, in all reasonable probability, continue until J.K.K.B.'s eighteenth birthday. *See id.* § 161.003(a)(2). In addition, Maniglia testified that Mother failed to comply with the family service plan.

9

Dr. Reynolds testified that Mother's condition is not likely to improve in the foreseeable future. He discussed Mother's behavioral issues, and related two recent events that would be "very terrifying" for a child to witness. Dr. Reynolds assessed that Mother's "own individual emotional needs and mental issues would far outshadow her ability to provide a stable home environment for a child." Dr. Reynolds further testified that Mother suffers from polysubstance dependence, and Mother's criminal history reflects repeated problems with illegal drugs. Dr. Reynolds worried that it is highly likely, if Mother were released into the community without supervision that she would return to her illegal behavior.

Mother's non-drug-related criminal history is of concern in considering present and future emotional and physical danger to J.K.K.B. Mother's criminal history includes domestic assault, criminal trespass, and aggravated assault of a healthcare professional. Of particular concern to J.K.K.B.'s best interest calculus is Mother's past conduct involving sexual exploitation of a minor, sexual conduct with a minor, crime against a child, and the contributing to the delinquency of a minor.

Mother's concessions, her failure to comply with the family service plan, her serious mental health issues that require ongoing supervision and treatment, and the evidence of her criminal and drug history weigh in favor of termination. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child."); *In re D.M.*, 58 S.W.3d 801, 817 (Tex. App.—Fort Worth 2001, no pet.) ("Appellant's history of drug abuse, her

10

admissions and conduct relating to recent drug use, and her inability to maintain a lifestyle free from arrests and incarcerations[] is some evidence that termination would be in the children's best interest."); *see also* TEX. FAM. CODE ANN. § 263.307(b)(8) (parent's substance-abuse history is a safe-environment factor).

In summary, when considering J.K.K.B.'s interests and needs and Mother's circumstances, the trial court could reasonably have formed a firm conviction or belief that Mother was not positioned to nurture J.K.K.B.'s psychological and physical needs. These factors weigh in favor of termination.

### 3. Mother's parental abilities; TEX. FAM. CODE ANN. § 263.307(b)(11)–(12) (safe-environment factors for parenting ability and parent's willingness and ability to effect positive environmental and personal changes)

Mother concedes the sufficiency of the evidence supporting the trial court's findings under subsections (C) and (N) of section 161.001(1) of the Texas Family Code. She therefore concedes the sufficiency of the evidence to show that she abandoned J.K.K.B. *See* TEX. FAM. CODE ANN. § 161.001(1)(C), (N). The evidence reveals that Mother has had no contact with J.K.K.B. for five to eight years. The fact that Mother was absent for a significant portion of J.K.K.B.'s life and made little effort to avoid incarceration even when placed on probation weighs in favor of termination.

### 4. Available programs to assist Mother in promoting J.K.K.B.'s best interest

When asked whether any parenting or life skills were discussed with Mother, Dr. Reynolds stated that there is "to some degree, a discussion of that sort" with her social worker, but that those discussions "have generally been minor issues at the moment

11

compared to the more pressing concerns we've had working with her, which has been the temper outbursts, the volatility of her behaviors." The trial court could have reasonably concluded that Mother's "more pressing concerns" eclipsed the assistance available from such programs. This factor weighs in favor of termination.

**5.     Mother's and the Department's plans for J.K.K.B.; stability of the home; TEX. FAM. CODE ANN. § 263.307(b)(11)–(12)**

"The need for permanence is a paramount consideration for the child's present and future emotional and physical needs. . . . The goal of establishing a stable, permanent home for a child is a compelling government interest." *In re A.L.*, 389 S.W.3d 896, 902 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see In re T.D.C.*, 91 S.W.3d 865, 880 (Tex. App.—Fort Worth 2002, pet. denied). Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

Mother testified that she wanted to raise J.K.K.B. She said she had a one-bedroom trailer but was "stuck" in the mental facility and did not know when she would be released. Regarding her health, she testified that "[I]f I do get sick, I can hire a nurse." She did not have any other placement plans for J.K.K.B.

Dr. Reynolds testified that although Mother wanted to be a parent to J.K.K.B., he disbelieved that "she would have that capacity to carry through with that in an appropriate, meaningful fashion." He considered it substantially unlikely that Mother "would be in a state where she could care for herself, much less any children, without extremely close supervision and structure." Dr. Reynolds also noted that upon discharge Mother likely would continue to a "structured placement setting," where "it would be very, very unusual"

12

and "outside the usual routine" to allow J.K.K.B. to reside. Maniglia did not think it was possible that J.K.K.B. could reside with her Mother at the mental health facility.

The Department recommended that J.K.K.B. be adopted by non-relatives. The Department is in a better position to achieve its goals for J.K.K.B. than Mother, whose plans the trial court could have found to be unrealistic. Moreover, Mother's lengthy abandonment of J.K.K.B., mental-health challenges, and criminal and drug history points to continuing instability in her home. *See In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (holding fact finder can measure a parent's future conduct by past conduct); *In re K.A.S.*, 131 S.W.3d 215, 229–30 (Tex. App.—Fort Worth 2004, pet. denied) (same); *see also In re V.A.*, No. 13-06-00237-CV, 2007 WL 293023, at *6 (Tex. App.—Corpus Christi Feb. 1, 2007, no pet.) (mem. op.) (same). These factors weigh in favor of termination.

### 6. Mother's acts or omissions indicating that the existing parent-child relationship is not a proper one; TEX. FAM. CODE ANN. § 263.307(b)(11)–(12)

Mother concedes the trial court's finding that she abandoned J.K.K.B. The Department's family service plan stated that Mother has had no contact with J.K.K.B. in five to eight years and detailed Mother's extensive criminal history. Mother failed to comply with the service plan. Since being admitted to a mental health facility, Mother has had repeated outbursts. This factor weighs in favor of termination.

### 7. Excuses for Mother's acts or omissions

Mother offered no excuses for her acts or omissions. This factor weighs in favor of termination.

13

**D.      Summary**

Considering the *Holley* and relevant statutory factors, we conclude the evidence is both legally and factually sufficient to support the trial court's finding that termination is in J.K.K.B.'s best interest.    We overrule Mother's sole issue.

### III.   CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to J.K.K.B.


GREGORY T. PERKES
Justice

Delivered and filed the
31st day of October, 2013.

14