**Motion for Rehearing Denied; Memorandum Opinion of November 20, 2018, Withdrawn; Judgment Affirmed and Substitute Memorandum Opinion filed December 11, 2018**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00529-CV

---

## IN THE INTEREST OF S.J.N. AND R.L.N., CHILDREN

---

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2017-03363J**

---

## S U B S I T U T E   M E M O R A N D U M   O P I N I O N

We withdraw our memorandum opinion of November 20, 2018, and substitute this memorandum opinion in its place. Appellant's motion for rehearing is denied.

This accelerated appeal arises from a final decree in a suit in which termination of the parent-child relationship was at issue. *See* Tex. Fam. Code Ann. § 109.002(a-1). The trial court terminated the parental rights of J.B. (Mother) and appellant S.N. (Father) with respect to their children, Sarah and Rob.[1] The trial court

---

[1] We use pseudonyms or initials to refer to the children, parents, and other family members involved in this case. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

also appointed the Texas Department of Family and Protective Services (the Department) to be the children's managing conservator.

Only Father appeals. He challenges the sufficiency of the evidence to support termination. We conclude legally and factually sufficient evidence supports the trial court's findings that (1) Father failed to comply with his court-ordered family service plan, and (2) termination of Father's parental rights is in the children's best interest. Therefore, we affirm the trial court's judgment.

## BACKGROUND

### A.     Removal

The following facts come from the affidavit of Department investigative caseworker Jonathan Beauford.

The Department received two referrals on the same day in June 2017. The first alleged Father physically abused Rob, then age 11, and negligently supervised Sarah, then age 13. Father reportedly disciplined Rob inappropriately, including forcing him to exercise excessively, sometimes to the point of vomiting. At least one witness saw Father make Rob do push-ups for 40 minutes before the police arrived. Rob screamed and cried from the pain. According to the report, Father also required Sarah and Rob to collect garbage in the dark and mow the grass in the dark. The second referral described a large bruise the size of a palm on the left side of Rob's face and alleged Father hit Rob in vital areas, namely the head and ribs. The police arrested Father that day for injury to a child.

Beauford interviewed Rob and Sarah later that day. Rob said Father began drinking heavily about a year earlier. On various occasions when Father was drunk, Rob said, he physically abused Rob and forced him to perform extreme exercise, including 400 push-ups. Rob admitted Father slapped him hard on the face but said

the slap mark disappeared overnight. Sarah reported Father drank "all the time" and confirmed he compelled Rob to exercise excessively. She said Father gets "easily irritated and frustrated" with Rob.

Because nobody was available to take care of them, the Department took emergency custody of the children. The Department filed this lawsuit the next day, attaching Beauford's affidavit to the original petition. Following a full adversary hearing, the trial court made several findings, including:

- Sufficient evidence exists to satisfy a person of ordinary prudence and caution that there is a continuing danger to the children's physical health or safety, and allowing them to remain in Father's care is contrary to their welfare; and

- The Department made reasonable efforts consistent with the children's health and safety to prevent or eliminate the need to remove them from and to make it possible for them to return to Father's care, but continuation in that home would be contrary to their welfare.

Based on those findings, the trial court ordered the children to be removed from Father's care and named the Department as their temporary managing conservator.

## B.    Family service plan

Following a full adversary hearing, the trial court signed an order requiring Father to comply with any family service plan by the Department. The service plan would identify the goals he needed to achieve and tasks and services he needed to complete before the children could be returned to his care.

The service plan noted several areas of concern: Father lacks parenting skills and denies any wrongdoing in the discipline of his children; Father's emotional instability seriously impairs his ability to care for and nurture the children; Father has a history of physically abusing and neglecting his children; the home environment is "stressful and unstable"; Father denies physically abusing or neglecting his children; and due to his alcohol abuse, when Father is under the

3

influence of alcohol, he cannot protect his children and instead harms them. The Department created goals for Father to alleviate those concerns, most of which centered around Father's learning self-control, accepting responsibility for his behavior, and changing his pattern of abuse and neglect.

So he could accomplish those goals, the Department's service plan for Father required him to, among other things:

1. visit his children regularly;

2. attend all court hearings and permanency team meetings;

3. refrain from criminal activity;

4. obtain and maintain suitable employment and provide the caseworker with documentation verifying all sources of income;

5. obtain and maintain safe, stable housing for at least six consecutive months and provide the caseworker with a copy of the lease agreement or ownership documents;

6. complete parenting classes;

7. submit to random drug testing and test negative at all times;

8. complete a substance abuse assessment and follow any recommendations, including participating in individual or group therapy; and

9. complete a psychosocial evaluation and follow any recommendations.

The trial court adopted the service plan as an order of the court on July 27, 2017.

### C. Trial

Trial was held on April 24, 2018. The Department presented testimony from caseworker Tracy Ratcliff and Court Appointed Special Advocate (CASA) Etta Pickett. The Department's documentary evidence, all of which was admitted without objection, included Beauford's affidavit, Father's family service plan and the order adopting it as a court order, Father's drug test results, Father's criminal records, the

Department's final permanency report, and the CASA report. Father attended trial personally and was represented by counsel. Neither he nor the children's attorney ad litem called witnesses or offered other evidence.

### 1. Evidence about Father

***History of abuse and neglect of the children.*** Father was investigated in Las Vegas three times for abuse and neglect of Sarah and Rob. The first investigation took place in 2007, when Sarah was three and a half years old and Rob had just turned two. The report alleged Father physically abused both children and indicated the children had bruises. The investigating agency ruled it had reason to believe those allegations. In 2012 and 2013, Father was accused of neglecting the children. Ratcliff testified the latter two reports alleged Father had been drinking excessively. The 2013 allegations were ruled out; the record does not reflect the disposition of the 2012 case.

Father's history with children's protective services continued in Texas in December 2016, when the Department received a referral alleging Father physically abused Rob. According to the report, Father subjected Rob to "bizarre punishment" due to Father's belief Rob was masturbating. Father and an unrelated home member allegedly tied Rob up with rope, and the unrelated home member allegedly punched Rob in a vital body area. The Department found it had reason to believe those allegations, but the case was closed anyway. In March 2017, Father was accused of kicking Sarah while forcing her to do push-ups. The Department ruled out those allegations and closed the case.

Ratcliff testified about the June 2017 events giving rise to this case. Rob told her Father slapped him on his face. Upon seeing Rob demonstrate the slap for Ratcliff, Sarah said Father slapped Rob harder than Rob was indicating. The children told Ratcliff about Father's continuing pattern of alcohol abuse. When he was

5

inebriated, they said, Father would force them to perform extreme exercise, but not when he was sober. The children also said Father did not remember much of what he did when he was drunk.

The events that began this case also led to Father's arrest that evening for injury to a child, a third-degree felony. He remained in jail on that charge until early October 2017, when he was released on bond. Father pleaded guilty to the charge. In January 2018, the criminal court deferred an adjudication of guilt and placed him on community supervision for two years. The terms of his community supervision prohibited Father from having any contact with a minor, including Rob and Sarah, for the two-year term without court permission.[2]

***Drug and alcohol abuse.*** Father tested negative for all drugs and alcohol beginning after his release from jail in October 2017. He missed one test in February 2018, but Ratcliff testified his failure to appear was the result of her mistake about scheduling and should not be attributed to Father.

***Service plan.*** Nearly seven months elapsed between the time Father's release from jail and trial. During that time, Father underwent substance abuse and psychosocial assessments. The recommendations from those assessments included individual and group counseling for substance abuse, individual therapy for anger management, and parenting classes.

At the time of trial, Father was in "the beginning stages" of individual and group counseling for substance abuse. He had just begun individual therapy for anger management. He had not started parenting classes.

The record is largely devoid of information about Father's housing,

---

[2] The criminal court made an exception for Father's other biological daughter, a child not at issue in this case, and allowed Father to interact with her by telephone, email, and other remote forms of communication.

employment, or future plans. According to the CASA report filed two weeks before trial, Father was living at the Last Chance Recovery Center, a sober-living home. The record contains no information about Father's intended living arrangements after Last Chance. Likewise, the record does not indicate whether Father had a job.

### 2. Evidence about the children

Sarah and Rob were placed in a children's group home when they were removed. The record contains scant evidence about their conditions, needs, or desires at the time of removal. Near the time of trial, each child was said to be thriving and doing well socially and academically. Sarah was being successfully treated for severe acne. The children were very bonded with one another.

Ages 14 and 12, respectively, at trial, both Sarah and Rob enjoyed spending time with their "host family," a family with whom they had scheduled interaction through the group home. One host family had expressed interest in adopting the children. The Department was exploring that possibility as well as adoption by the children's stepmother, who lived in Las Vegas. Sarah and Rob both said they love Father but want to be adopted into a stable family environment.

### 3. Trial court's findings

The trial court found Father engaged in the conduct described in subsections E (endangerment) and O (failure to comply with the service plan) of Family Code section 161.001(b)(1). The court additionally found termination of Father's parental rights was in the children's best interest. The trial court appointed the Department to be the children's managing conservator.

## ANALYSIS

## I. Burden of proof and standards of review

Involuntary termination of parental rights is a serious matter implicating

fundamental constitutional rights. *See In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *In re J.E.M.M.*, 532 S.W.3d 874, 879 (Tex. App.—Houston [14th Dist.] 2017, no pet.). However, the child's emotional and physical interests must not be sacrificed to preserve parental rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Parental rights can be terminated if clear and convincing evidence shows (1) the parent committed an act described in section 161.001(b)(1) of the Family Code, and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2). Only one predicate finding under section 161.001(b)(1), along with the best-interest determination, is necessary to support termination. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007. This high burden reflects the severity of termination.

The heightened burden of proof results in heightened standards of review for evidentiary sufficiency:

- *Legal sufficiency.* We consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could disbelieve. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

- *Factual sufficiency.* We consider and weigh all the evidence, including disputed or conflicting evidence, to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that dispute in favor of its finding. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *In re H.R.M.*, 209 S.W.3d

105, 109 (Tex. 2006) (per curiam). We may not second-guess the fact finder's resolution of a factual dispute by relying on disputed evidence or evidence the fact finder "could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

## II.   Predicate ground for termination: Failure to comply with court-ordered service plan (Family Code section 161.001(b)(1)(O))

Father concedes the legal sufficiency but challenges the factual sufficiency of the evidence to support the trial court's finding regarding section 161.001(b)(1)(O) of the Family Code.

Subsection O authorizes termination of the parent-child relationship if the trial court finds, by clear and convincing evidence, that a parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code Ann. § 161.001(b)(1)(O).

Father concedes: (1) he failed to comply with a court order specifically establishing what he must do for Sarah and Rob to be returned to him, (2) the children were in the Department's conservatorship for at least nine months, and (3) the children were removed under Family Code chapter 262 for abuse or neglect. But, he contends a preponderance of the evidence demonstrates he was unable, through no fault of his own, to complete the service plan despite making a good faith effort. That contention is an invocation of the defense to subsection O, codified in section 161.001(d). That section states:

> (d)    A court may not order termination under Subsection (b)(1)(O)

based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that:

>(1)     the parent was unable to comply with specific provisions of the court order; and

>(2)     the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

Tex. Fam. Code Ann. § 161.001(d).

Section 161.001(d) applies only to suits filed on or after its effective date of September 1, 2017:

>SECTION 73. . . . (c) Except as otherwise provided by this section, the changes in law made by this Act apply only to a suit affecting the parent-child relationship filed on or after the effective date of this Act. A suit affecting the parent-child relationship filed before the effective date of this Act is subject to the law in effect at the time the suit was filed, and the former law is continued in effect for that purpose.

>. . .

>SECTION 79. Except as otherwise provided by this Act, this Act takes effect September 1, 2017.

Act of May 26, 2017, 85th Leg., R.S., ch. 317 §§ 73(c), 79, 2017 Tex. Sess. Law Serv. 615, 618, 640–41 (to be codified at Tex. Fam. Code § 161.001(b)(1)(d)). The Department filed its original petition for termination on June 16, 2017. Accordingly, the 161.001(d) defense to subsection O does not apply to this case. *See In re A.W.*, No. 02-18-00147-CV, 2018 WL 5074770, at *10 (Tex. App.—Fort Worth Oct. 18, 2018, no pet. h.) (mem. op.) (concluding section 161.001(d) defense did not apply to suit filed in October 2016).

Even if the defense applied, we would conclude Father did not satisfy his burden of proof. Section 161.001(d) places the burden on the parent to prove by a

preponderance of the evidence that he was unable to comply with the court-ordered service plan, he made a good faith effort to comply with the order, and his failure to comply is not attributable to any fault of his own. Tex. Fam. Code Ann. § 161.001(d). Father offered no evidence at trial. He did not explain why he was unable to complete the required services in the nearly seven months that elapsed between the day he was released from jail and the day of trial.

In light of the entire record, we conclude the disputed evidence the trial court could not reasonably have credited in favor of its subsection O finding is not so significant that the court could not reasonably have formed a firm belief or conviction that Father failed to comply with his service plan. Accordingly, the evidence is factually sufficient to support the trial court's finding under subsection O. We overrule Father's second issue.

## III.    Collateral consequences

Despite our upholding the subsection O finding for termination, Father urges us to review the factual sufficiency of the evidence to support the trial court's subsection E (endangerment) finding because it may have negative collateral consequences. *In re J.J.G.*, No. 14-15-00094-CV, 2015 WL 3524371, at *4 (Tex. App.—Houston [14th Dist.] June 4, 2015, no pet.) (mem. op.). Those consequences include the binding nature of the endangerment findings on the best-interest analysis in this case and their potential to support termination of his relationship with another child under subsection M in a future case. *Id.* Texas Family Code section 161.001(b)(1)(M) permits termination of parental rights based on a finding that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." Tex. Fam. Code Ann. § 161.001(b)(1)(M). Because the current appeal presents the only

11

opportunity for review of the endangerment findings, which would be binding in a future proceeding, we will address Father's arguments. *See In re C.M.-L.G.*, No. 14-16-00921-CV, 2017 WL 1719133, at *8 (Tex. App.—Houston [14th Dist.] May 2, 2017, pet. denied) (mem. op.).

### A.    Legal standards

Family Code section 161.001(b)(1)(E) requires clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Conduct" includes acts and failures to act. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The parent's conduct both before and after the Department removed the child from the home is relevant to a subsection E inquiry. *S.R.*, 452 S.W.3d at 361.

A finding of endangerment under subsection E requires evidence the endangerment resulted from the parent's conduct, including acts, omissions, or failures to act. *Id.* at 360. Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* at 361. A court properly may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.). While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury. Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531,

533 (Tex. 1987); *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re A.L.H.*, 515 S.W.3d 60, 92 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

### B. Application

*Abuse.* A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) "Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *Id.*; *accord S.R.*, 452 S.W.3d at 361.

Father concedes he endangered the children by physically abusing or mistreating them. He contends, though, that when all the evidence is considered, no rational fact finder could form a firm belief that the abuse or mistreatment was not part of a "continuing and deliberate course of conduct." We disagree. Beginning in 2007, Father was investigated five times for abuse and neglect of Sarah and Rob before the June 2017 events precipitating this case. The investigating agency found it had reason to believe the 2007 allegations, concerning Father's mistreatment of the children as toddlers, and revealed Father physically abused both children. The same agency investigated allegations of abuse and neglect in 2012 and 2013. Though the record does not reflect the disposition of the 2012 case, the 2013 allegations were ruled out. In December 2016, the Department found reason to believe Father physically abused Rob. Due to Father's belief Rob was masturbating, Father and an another adult tied Rob up and punched him in a vital area. Then in March 2017, the Department ruled out allegations that Father kicked Sarah while he forced her to do push-ups. A rational fact finder could consider the five previous allegations of abuse and neglect, two of which the investigating agency found it had reason to believe,

and form a firm belief that Father's 2017 abuse and neglect of Sarah and Rob was part of a continuing and deliberate course of conduct.

*Alcohol abuse.* A parent's continuing substance abuse can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A parent's drug use exposes the child to the possibility the parent may be impaired or imprisoned and, thus, unable to take care of the child. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617–18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The record suggests a pattern of intermittent but extreme alcohol abuse by Father. The children disclosed Father's history of excessive drinking. The record also indicates Father tested negative for alcohol throughout the pendency of this case. The caseworker testified she believes Father to be a good parent except for the alcohol abuse. Father points to his progress toward sobriety as evidence undermining the trial court's best-interest finding. Substance abuse is "hard to escape," and the fact finder is "not required to ignore a long history of dependency . . . merely because it abates as trial approaches." *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The trial court may reasonably decide a parent's changes before trial are too late to impact the best-interest decision. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied). Although a reasonable fact finder could look at Father's progress and decide it justified the risk of keeping him as a parent, we cannot say the trial court acted unreasonably in finding the children's best interest lay elsewhere. *M.G.D.*, 108 S.W.3d at 514. It is not our role to reweigh the evidence on appeal, and we may not substitute our judgment of the children's best interest for the considered judgment of the fact finder. *See id.* at 531 (Frost, J., concurring in judgment).

***Criminal activity.*** A parent's criminal conduct, convictions, or imprisonment is relevant to the question of whether he engaged in an endangering course of conduct. *S.R.*, 452 S.W.3d at 360–61; *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.). Imprisonment alone is not an endangering course of conduct but is a fact properly considered on the endangerment issue. *Boyd*, 727 S.W.2d at 533–34. Routinely subjecting a child to the probability he will be left alone because his parent is in jail endangers the child's physical and emotional well-being. *S.M.*, 389 S.W.3d at 492.

Father's abuse of Rob led to Father's arrest for injury to a child. He stayed in jail on that charge for several months until he was released on bond. He then pleaded guilty to the charge and was placed him on community supervision for two years, during which time he was forbidden from having contact with Sarah or Rob.

In light of the entire record, we conclude the disputed evidence the trial court could not reasonably have credited in favor of its finding under subsection E is not so significant that the court could not reasonably have formed a firm belief or conviction that Father endangered Sarah and Rob. Accordingly, the evidence is factually sufficient to support the trial court's finding under subsection E. We overrule Father's first issue.

## IV. Best interest

Father's third issue challenges the legal and factual sufficiency of the evidence to support the trial court's best-interest finding

### A. Legal standards

Termination must be in the child's best interest. Tex. Fam. Code Ann. § 161.001(b)(2). Texas courts presume two conditions to be in a child's best interest: (1) prompt, permanent placement in a safe environment*, id.* § 263.307(a); and

(2) remaining with the child's natural parent. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Courts may consider these non-exclusive factors, known as the *Holley* factors, in its best-interest analysis: the desires of the child; the physical and emotional needs of the child now and in the future; the physical and emotional danger to the child now and in the future; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). This list of factors is not exhaustive, and evidence is not required on all the factors to support a finding that termination is in the child's best interest. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Family Code also identifies factors the court may consider in evaluating a parent's willingness and ability to provide the child with a safe environment. Tex. Fam. Code Ann. § 263.307(b). Finally, evidence supporting the statutory predicate of termination is relevant to the best-interest analysis. *C.H.*, 89 S.W.3d at 27.

### B.  Application

#### 1.  The children

*Desires.* According to the caseworker and the CASA, Sarah and Rob both love Father. They want to have continued communication with him, but they also want to be adopted into a family environment.

*Needs.* The group home was meeting all of Sarah's and Rob's needs. The record does not suggest either child has any special needs. Both children were performing well academically and socially.

***Stability of proposed placement.*** At trial, the Department did not have a new placement ready for the children. The Department was going to explore adoption by one of the host families from the group home or by the children's stepmother. The lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located. *C.H.*, 89 S.W.3d at 28. "Instead, the inquiry is whether, on the entire record, a fact finder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest—even if the agency is unable to identify with precision the child's future home environment." *Id.*

### 2. Father

***Predicate grounds for termination under Family Code section 161.001(b)(1).*** Evidence supporting termination under the grounds listed in section 161.001(b)(1) can be considered in support of a finding that termination is in the children's best interest. *See id.* at 27. Accordingly, the evidence that Father failed to comply with his court-ordered service plan (subsection O) and endangered Sarah and Rob (subsection E), discussed above, is relevant to the best-interest analysis.

***Willingness and ability to parent.*** Although he had not completed the services required by his service plan, including counseling for alcohol abuse and anger management, the caseworker testified Father was cooperative and trying to work his services. Still, both the caseworker and the CASA testified Father was not ready or able at that time to provide a stable home for Sarah and Rob.

***Acts or omissions and any excuses for them.*** Father notes he was incarcerated for more than three months at the beginning of this case and, therefore, could not work on his service plan during that period. He offers no explanation, however, for his failure even to begin his parenting classes once released from jail.

### 3.    Conclusion on best interest

Considering all the evidence in the light most favorable to the best-interest finding, we conclude the trial court reasonably could have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interest. *See J.O.A.*, 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25. Further, in light of the entire record, we conclude the disputed evidence the court could not reasonably have credited in favor of its best-interest finding is not so significant that it could not reasonably have formed a firm belief or conviction that termination of Father's rights was in the children's best interest. Accordingly, the evidence is legally and factually sufficient to support the trial court's finding that termination of Father's parental rights is in Sarah's and Rob's best interest. We overrule Father's third issue.

### CONCLUSION

We affirm the trial court's judgment.


/s/    Ken Wise
Justice

Panel consists of Justices Donovan, Wise, and Jewell.